UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Julia Piazza, | 1:07-cv-00954-OWW-GSA |
| Plaintiff, | ORDER DENYING PLAINTIFF'S |
| v. | MOTION TO REMAND (Doc. 6) AND DENYING PLAINTIFF'S MOTION TO |
| EMPI, Inc., Larry Davis, and DOES 1 - XX, | STRIKE THE DECLARATION OF HARRY L. ZIMMERMAN (Doc. 11) |
| Defendants. | |

## I.   Introduction.

This case concerns claims for the sexual harassment, sexual battery, retaliation, wrongful termination of Julia Piazza ("Plaintiff"), and failure to pay wages by EMPI, Inc. ("EMPI") and Larry Davis ("Davis") (collectively "Defendants").  Before the court for decision are Plaintiff's motion to remand this case to the Fresno County Superior Court ("Motion to Remand") and Plaintiff's motion to strike the declaration of Harry L. Zimmerman ("Motion to Strike").  EMPI opposes both motions.  EMPI submitted Davis's Declaration ("Davis Declaration") in support of its opposition to Plaintiff's Motion to Remand.  Davis, however, has not been served with a copy of the summons and First Amended

1  Complaint as of August 24, 2007.[1]  Davis Decl. ¶ 5.  For the

2  reasons stated below, Plaintiff's Motion to Remand and Motion to

3  Strike are denied.

## II.  Background.

Plaintiff filed her original Complaint for Compensatory and
Punitive Damages ("Original Complaint") in Fresno County Superior
Court on April 18, 2007, alleging state law causes of action for
sexual harassment and retaliation, sexual battery, termination in
violation of public policy, breach of employment contract,
failure to pay wages, and waiting time and penalties.  Plaintiff
served EMPI by personal service on April 24, 2007.  The proof of
service, which was filed with the Fresno County Superior Court on
May 15, 2007, indicates "Lynn Masanz: Managing Agent for Service
of Process" at "599 Cardigan Road[,] St. Paul, MN. 55126-4099" on
"4-24-07" at "1:15 p.m." received the summons and Original
Complaint on behalf of EMPI.

Lynn Masanz ("Masanz"), the individual whom Plaintiff served
with the Original Complaint, is a medical billing assistant in
EMPI's Minnesota office.  Masanz Decl. ¶ 1; Zimmerman Suppl.
Decl. ¶ 3.  As a medical billing assistant Masanz handles

---

[1] Plaintiff attempted to serve Davis with the summons and
First Amended Complaint on July 29, 2007, through substituted
service.  Plaintiff left a copy of the summons and First Amended
Complaint with an individual by the name of Sherri Davis at 2914
Sommer Star Road, Placerville, CA 95667, a dwelling house or
usual place of abode.  This is Davis's former residence, which he
sold in May 2006.  Davis Decl. ¶ 4.  Davis does not know of any
individual named Sherri Davis and has never authorized anyone
with that name to accept legal service on his behalf.  Davis
Decl. ¶ 5.

1  invoices and requests for medical records.  Masanz Decl. ¶ 2.

2  Masanz is not an officer, managing agent, or general agent of

3  EMPI.  Masanz Decl. ¶ 4; Zimmerman Suppl. Decl. ¶ 3.  EMPI never

4  authorized Masanz to receive service of process on behalf of the

5  company.  Masanz Decl. ¶ 4; Zimmerman Suppl. Decl. ¶ 3.

6  On May 14, 2007, Robert Kristoff ("Kristoff"), counsel for

7  EMPI, called Plaintiff's counsel and spoke with his assistant.

8  Kristoff Decl. ¶ 3.  Kristoff informed her that EMPI had not been

9  properly served with the Original Complaint, and the Original

10 Complaint incorrectly named EMPI as "EMPI Medical, Inc."  *Id.*

11 Kristoff also informed Plaintiff's counsel's assistant that if

12 Plaintiff filed a first amended complaint with EMPI's correct

13 name and sent it to Kristoff, he would accept service on behalf

14 of EMPI.  *Id.*  On June 1, 2007, Kristoff received a copy of the

15 summons and First Amended Complaint ("FAC") correctly identifying

16 EMPI.  *Id.* at ¶ 4.  Kristoff signed an acknowledgment of receipt

17 and accepted service on behalf of EMPI that same day.  *Id.*

18 In response to the FAC, which was filed in Fresno County

19 Superior Court on May 23, 2007, EMPI filed its Notice of Removal

20 on July 2, 2007.  EMPI's Notice of Removal invokes the federal

21 court's diversity of citizenship jurisdiction under 28 U.S.C. §

22 1332(a)(1).

23              III.  Legal Standard.

24 A district court may remand to state court a case that has

25 been removed to the district court if at any time it appears that

26 the district court lacks subject matter jurisdiction.  28 U.S.C.

27 § 1447(c).  A motion to remand on the basis of any defect in the

28 removal procedure must be made within 30 days of the filing of

3

1  the notice of removal.  *Id*.  Where a motion for remand is not

2  made within 30 days of removal of the case to the district court,

3  the court must remand the case to state court *sua sponte* when

4  federal subject matter jurisdiction is lacking.  A federal court

5  must determine its own jurisdiction even if the parties fail to

6  raise the issue.  *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215,

7  230-31 (1990).

8      Federal courts construe removal statutes strictly to limit

9  removal jurisdiction.  *Shamrock Oil & Gas Corp. v. Sheets*, 313

10  U.S. 100, 108 (1941); *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir.

11  1992).  Removal is generally proper when the district courts have

12  original jurisdiction over the action.  *See* 28 U.S.C. § 1441;

13  *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996).

14  Jurisdiction must be determined from the face of the complaint,

15  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987), and it

16  must be clear from the face of the complaint under the

17  well-pleaded complaint rule that federal subject matter

18  jurisdiction exists.  *Oklahoma Tax Comm'n. v. Graham*, 489 U.S.

19  838, 840-41 (1989) (per curiam).

20

21                      **IV.  <u>Discussion</u>.**

22      **A.   <u>Motion to Strike Zimmerman Declaration</u>.**

23      Before turning to the merits of the Motion to Remand,

24  Plaintiff's Motion to Strike must be addressed.  Plaintiff filed

25  two identical and separate documents entitled "Plaintiff's Notice

26  of Motion and Motion To Strike Declaration of Harry L. Zimmerman

27  Submitted by Defendant EMPI in Support of EMPI's Notice of

28  Removal."  (Docs. 11 and 12).  The Motion to Strike reads "This

1 motion will be based upon this Notice, the attached Memorandum of

2 Points and Authorities, on all pleadings and documents on file

3 herein, and on such other oral and documentary evidence that may

4 be presented at the hearing of this motion."  Plaintiff neither

5 attached a memorandum of points and authorities to her Motion to

6 Strike (Docs. 11 and 12), nor did she file the memorandum of

7 points and authorities as a separate document.  EMPI filed an

8 opposition brief to Plaintiff's Motion to Strike.  Plaintiff did

9 not file a reply brief.

10 Plaintiff's Motion to Remand, however, references her Motion

11 to Strike.  In the Motion to Remand, Plaintiff contends there is

12 no evidentiary support submitted in EMPI's Notice of Removal to

13 establish the citizenship of either EMPI or Davis.  Plaintiff

14 further contends the Zimmerman Declaration lacks foundation,

15 contains impermissible hearsay, and contains conclusory

16 allegations.

17 On July 2, 2007, and in conjunction with its Notice of

18 Removal, EMPI filed the "Declaration of Harry L. Zimmerman in

19 Support of Notice of Removal" ("Zimmerman Declaration").  In the

20 Zimmerman Declaration, Mr. Zimmerman declares that he is the

21 Executive Vice President and General Counsel of EMPI; that EMPI

22 is incorporated under the laws of Minnesota and maintained its

23 principal place of business in Minnesota, both at the time of

24 removal and when Plaintiff commenced this case; that according to

25 EMPI's personnel records, Davis's home residence changed from

26 California to Missouri on June 19, 2006, based on Davis's

27 communication to EMPI that he moved to Missouri; and that on June

28 27, 2007, Mr. Zimmerman called Davis at his home in Missouri, and

5

1  as of that date, Davis was still residing there.

2       Plaintiff's Motion to Strike lacks merit.  The first
3  paragraph of the Zimmerman Declaration indicates Mr. Zimmerman is
4  the Executive Vice President and General Counsel of EMPI.
5  Because of his high-level position with EMPI, Mr. Zimmerman has
6  personal knowledge of information concerning the company's legal
7  status, state of incorporation, and principal place of business.
8  While the Zimmerman Declaration does not include EMPI's articles
9  of incorporation, Mr. Zimmerman's personal knowledge may include
10 inferences and opinions, so long as they are grounded in personal
11 observation and experience.  *United States v. Neal*, 36 F.3d 1190,
12 1206 (1st Cir. 1994).  As general counsel, Zimmerman has access
13 to intimate information regarding EMPI's legal affairs.  In any
14 event, EMPI filed the "Supplemental Declaration of Harry
15 Zimmerman In Support of Defendant EMPI, Inc.'s Opposition to
16 Plaintiff's Motion to Remand" ("Supplemental Zimmerman
17 Declaration"), which further clarifies any infirmities with the
18 Zimmerman Declaration.  Attached to the Supplemental Zimmerman
19 Declaration are EMPI's "Articles of Amendment and Restated
20 Articles of Incorporation of EMPI, Inc.[,]" which were signed by
21 Mr. Zimmerman on February 26, 2007, and filed with the Minnesota
22 Secretary of State on March 2, 2007.  The Restated Articles of
23 Incorporation establish EMPI is a Minnesota corporation.

24      Mr. Zimmerman's reference to EMPI's personnel records
25 maintained in the ordinary course of the company's business
26 indicating Davis moved from California to Missouri on June 19,
27 2006 is not hearsay.  "Hearsay is a statement, other than one
28 made by the declarant while testifying at the trial or hearing,

1   offered in evidence to prove the truth of the matter asserted."

2   Fed. R. Evid. 801(d).  "Hearsay is not admissible except as

3   provided by these rules . . . ."  Fed. R. Evid 802.  Federal Rule

4   of Evidence ("FRE") 803 contains numerous exceptions to the

5   hearsay rule.  Among these exceptions is the business records

6   exception which provides:

> A memorandum, report, record, or data compilation, in any
> form, of acts, events, conditions, opinions, or
> diagnoses, made at or near the time by, or from
> information transmitted by, a person with knowledge, if
> kept in the course of a regularly conducted business
> activity, and if it was the regular practice of that
> business activity to make the memorandum, report, record
> or data compilation, all as shown by the testimony of the
> custodian or other qualified witness, or by certification
> that complies with Rule 902(11), Rule 902(12), or a
> statute permitting certification, unless the source of
> information or the method or circumstances of preparation
> indicate lack of trustworthiness. The term "business" as
> used in this paragraph includes business, institution,
> association, profession, occupation, and calling of every
> kind, whether or not conducted for profit.

16  Fed. R. Evid. 803(6).  The Zimmerman Declaration indicates EMPI

17  maintains personnel records in its ordinary course of business,

18  and the company's records indicate Davis's home address changed

19  from California to Missouri on June 19, 2006.  This portion of

20  the Zimmerman Declaration falls within the business records

21  exception to the hearsay rule.  While Plaintiff may challenge the

22  sufficiency of Davis's home address contained in EMPI's business

23  records to determine his citizenship for diversity jurisdiction

24  purposes, that inquiry is separate and distinct from the

25  standards for admissibility.

26      Plaintiff's Motion to Strike the Zimmerman Declaration is

27  DENIED.

28      B.   <u>Request for Judicial Notice</u>.

7

1   Plaintiff requests the court to take judicial notice of

2   EMPI's registration with the California Secretary of State under

3   FRE 201(b).  Attached to Plaintiff's request for judicial notice

4   is a copy of EMPI's registration from the California Secretary of

5   State's website.  EMPI does not oppose Plaintiff's request for

6   judicial notice.  EMPI's registration with the California

7   Secretary of State is an official public record and its contents

8   are not reasonably in dispute; it is therefore appropriately the

9   subject of judicial notice under FRE 201(b)(2).  *Association of*

10  *Irritated Residents v. Fred Schakel Dairy*, 460 F. Supp. 2d 1185,

11  1189-90 (E.D. Cal. 2006); *see also Reiner v. Washington Plate*

12  *Glass Co., Inc.*, 711 F.2d 414, 416 (D.C. Cir. 1983) (taking

13  judicial notice of appellee's date of incorporation by consulting

14  the records of the District of Columbia Recorder of Deeds

15  Office).

16  The attached copy of EMPI's registration contains the

17  following information:

---

**CORPORATION**

EMPI, INC. WHICH WILL DO BUSINESS IN CALIFORNIA AS EMPI, INC. (MINNESOTA)

**NUMBER**: C1881016     **DATE FILED**: 1/5/1994  **STATUS**: Surrender

**JURISDICTION**: Minnesota

**ADDRESS**

599 Cardigan Road
ST Paul, MN 55126

**AGENT FOR SERVICE OF PROCESS**

The Prentice-Hall Corporation System, Inc.
PO Box 526036
Sacramento, CA 95852

---

1  The copy of EMPI's registration also contains the following

2  disclaimer: "If the status of the corporation is 'Surrender', the

3  agent for service of process is automatically revoked.  Please

4  refer to California Corporations Code Section 2114 for

5  information relating to service upon corporations that have

6  surrendered."  The document that Plaintiff requests the court to

7  take judicial notice of indicates EMPI's status was in fact

8  "Surrender."  The copy of EMPI's registration indicates the

9  information was current as of July 20, 2007.

10       For the same reasons stated above, the court also takes

11  judicial notice of EMPI's current registration status with the

12  California Secretary of State under FRE 201(c).[2]  EMPI's current

13  registration status is "Active."  EMPI's current registration

14  contains the following information:

---

**CORPORATION**

EMPI, INC. WHICH WILL DO BUSINESS IN CALIFORNIA AS EMPI, INC.
(MINNESOTA)

NUMBER: C2976714     DATE FILED: 3/8/2007  STATUS: Active

JURISDICTION: Minnesota

**ADDRESS**

9800 Metric Blvd
Austin, TX 78758

AGENT FOR SERVICE OF PROCESS

CT Corporation System
818 West Seventh St
Los Angeles, CA 90017

---

26  [2] A search of the California Secretary of State's website
   using the term "EMPI" produced five results, one of which
27  provides EMPI's current registration and another being the
   registration that Plaintiff requested the court to take judicial
28  notice of.

1

2  Plaintiff's request for judicial notice is GRANTED.

3       C.   Motion to Remand to Fresno County Superior Court.

4       Plaintiff advances several reasons why the court should

5  remand this case to Fresno County Superior Court.  First, EMPI's

6  Notice of Removal was untimely.  Second, EMPI's Notice of Removal

7  was factually deficient and cannot be supplemented.  Third,

8  complete diversity does not exist between the parties.  Fourth,

9  EMPI failed to establish that the amount in controversy

10  requirement is satisfied.

11       1.   Timeliness of EMPI's Notice of Removal.

12       Plaintiff contends EMPI's Notice of Removal was untimely

13  because EMPI waited sixty-nine days after service to file its

14  Notice of Removal.  EMPI maintains it timely filed its Notice of

15  Removal on July 2, 2007, because Plaintiff's service of her

16  Original Complaint and summons on April 24, 2007, was

17  ineffective.  EMPI further maintains Plaintiff properly

18  effectuated service of the FAC and summons on June 1, 2007, which

19  triggered the thirty-day period to remove this case from state

20  court to federal court.

21       "Any civil action brought in a State court of which the

22  district courts of the United States have original jurisdiction,

23  may be removed by the defendant or the defendants, to the

24  district court of the United States for the district and division

25  embracing the place where such action is pending."  28 U.S.C. §

26  1441(a).  If a defendant or defendants desire to remove a civil

27  action from state court to federal court, they must file "a

28  notice of removal signed pursuant to Rule 11 of the Federal Rules

1    of Civil Procedure and containing a short and plain statement of

2    the grounds for removal, together with a copy of all process,

3    pleadings, and orders served upon such defendant or defendants in

4    such action."  28 U.S.C. § 1446(a).

5         "The notice of removal of a civil action or proceeding shall

6    be filed within thirty days after the receipt by the defendant,

7    through service or otherwise, of a copy of the initial pleading

8    setting forth the claim for relief upon which such action or

9    proceeding is based . . . ."  28 U.S.C. § 1446(b).  "The

10   statutory time limit for removal petitions is merely a formal and

11   modal requirement and is not jurisdictional."  *Fristoe v.*

12   *Reynolds Metals Co.*, 615 F.2d 1209, 1212 (9th Cir. 1980).

13   "Although the time limit is mandatory and a timely objection to a

14   late petition will defeat removal, a party may waive the defect

15   or be estopped from objecting to the untimeliness by sitting on

16   his rights."  *Id.*

17        Plaintiff correctly identifies the proper method to

18   effectuate service upon a corporation under California law and

19   the Federal Rules of Civil Procedure.  In California, "[a] civil

20   action is commenced by filing a complaint with the court."  Cal.

21   Code. Civ. P. § 411.10.  "[T]he court in which an action is

22   pending has jurisdiction over a party from the time the summons

23   is served on him as provided by Chapter 4 (commencing with

24   Section 413.10."  Cal. Code. Civ. P. § 410.50.

25        A summons may be served upon a corporation by delivering
     a copy of the summons and the complaint by any of the
26   following methods:

27        (a)  To the person designated as agent for service of
               process [as provided by the California
28             Corporations Code].

11

**(b)** To the president, chief executive officer, or other head of the corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a controller or chief financial officer, a general manager, or a person authorized by the corporation to receive service of process.

Cal. Code. Civ. P. § 416.10.  Similarly, the Federal Rules of Civil Procedure provide service upon a corporation may be effected

[pursuant to the law of the state in which the district court is located], or by delivering a copy of the summons and complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant . . . .

Fed. R. Civ. P. 4(h)(1).

Plaintiff did not properly serve EMPI on April 24, 2007. Plaintiff's proof of service describes service on Lynn Masanz as EMPI's "managing agent for service of process."  The proof of service asserts Fresno Attorney Service and Andy Lonergan personally served Lynn Masanz.  It is unclear whether Plaintiff's counsel, Fresno Attorney Service, or Andy Lonergan completed the proof of service naming Lynn Masanz as EMPI's managing agent. EMPI has provided clear and uncontroverted evidence, through the Supplemental Zimmerman Declaration and Lynn Masanz's own declaration ("Masanz Declaration"), that Masanz is not an individual authorized to receive service on behalf of EMPI. Masanz is a medical billing assistant—a low-level employee at EMPI—who handles medical invoices and requests for medical records.  Masanz states in her declaration that she is neither an officer, managing agent, or high-ranking employee, nor has she

12

1  ever been authorized to accept service of process on behalf of
2  EMPI, nor has Mr. Zimmerman ever authorized her to accept
3  service.  Masanz admits in her declaration that she received a
4  package on April 24, 2007, which contained the Original
5  Complaint, and that she forwarded it on to the administrative
6  assistant to the Executive Vice President of Operations.  As
7  Masanz is not a person authorized to receive service under
8  California Code of Civil Procedure § 416.10, Plaintiff's
9  attempted service on EMPI of the Original Complaint and summons
10 is invalid.

11      The only remaining question is whether under 28 U.S.C. §
12 1446(b), the thirty-day removal period is triggered when the
13 defendant receives a summons and complaint regardless of whether
14 service was proper, or whether proper service is a prerequisite
15 to commencement of the thirty-day removal period.  Two cases
16 provide useful guidance.  In *Estate of Baratt v. Phoenix Mut.*
17 *Life Ins. Co.*, 787 F. Supp. 333 (W.D.N.Y. 1992), the district
18 court held that improper service did not trigger the thirty-day
19 removal period under 28 U.S.C. § 1446(b).  In *Baratt*, the
20 plaintiff's process server served a summons with notice on a
21 part-time receptionist at the defendant's company on December 9,
22 1991.  The receptionist's duties included greeting people who
23 came to the office, typing, opening mail, answering phones, and
24 reviewing the completeness of insurance applications.  On January
25 23, 1992, plaintiff served a copy of the summons with notice on
26 the New York State Insurance Department, which defendant received
27 on January 27, 1992.  On January 30, 1992, defendant removed the
28 case from state court to federal court.  Plaintiff sought to

1  remand the case arguing the thirty-day time period to file a

2  notice of removal began on December 9, 1991, when service was

3  made upon the receptionist.  Defendant argued its removal notice

4  was timely because the thirty-day removal period did not begin to

5  run until it received the properly served summons on January 27,

6  1992.  The court reasoned "the through service or otherwise"

7  language in § 1446(b) "was not intended to diminish the right to

8  removal by permitting a plaintiff to avoid state service

9  requirements."  *Baratt*, 787 F. Supp. at 336.  The court also

10 noted the "'or otherwise' language of section 1446(b) was not

11 intended to permit a plaintiff to substitute informal or improper

12 service for the traditional requirements of personal service."

13 *Id.* at 337.

14     More recently, in *Murphy Bros., Inc. v. Michetti Pipe

15 Stringing, Inc.*, 526 U.S. 344 (1999), the Supreme Court addressed

16 a slightly different issue that sheds light on the commencement

17 of the thirty-day removal period in § 1446(b).  The issue before

18 the Court in *Murphy Bros.* was whether the named defendant must be

19 officially summoned to appear in the action before the time to

20 remove begins, or does the thirty-day period start earlier, on

21 the named defendant's receipt, before service of official

22 process, of a courtesy copy of the filed complaint faxed by

23 plaintiff's counsel.  On January 26, 1996, the plaintiff had

24 filed a complaint in state court for breach of contract and

25 fraud.  Three days later, on January 29, plaintiff faxed a

26 courtesy copy of the file-stamped complaint to one of the

27 defendant's vice presidents.  It was not until February 12, 1996,

28 that plaintiff officially served defendant under local law by

**14**

certified mail.  The defendant removed the case to federal court on March 13, 2006, thirty days after service and forty-four days after receiving the faxed courtesy copy.  The Court held that a defendant's time to remove is triggered by simultaneous service of the summons and complaint.  *Murphy Bros.*, 526 U.S. at 347-48. In reaching this conclusion, the Court read Congress's provisions for removal in light of the following bedrock principal: "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, *and brought under a court's authority, by formal process*."  *Id.* at 347 (emphasis added).  Service of process, the Court noted, is fundamental to any procedural imposition on a named defendant under a longstanding tradition in our system of justice.  *Id.* at 350.  "In the absence of service of process . . . a court ordinarily may not exercise power over a party the complaint names as a defendant."  *Id.*  Service of the summons is the mechanism by which a court asserts jurisdiction over the person of the party served.  *Id.*  "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend."  *Id.*

The facts of *Barrat* are indistinguishable from this case, and the Supreme Court's reasoning in *Murphy Bros.* is equally compelling.  In California, a court obtains jurisdiction over a party "from the time the summons is *served upon him as provided by Chapter 4*."  Cal. Code Civ. Proc. § 410.50 (emphasis added). As previously determined, Plaintiff did not serve EMPI as provided under California Code of Civil Procedure § 416.10 (a

15

1  section in Chapter 4), the statute for effecting service upon a

2  corporation.  Instead of serving the Original Complaint and

3  summons on a person authorized by law to receive service under §

4  416.10, Plaintiff served Masanz, a low-level medical billing

5  assistant and an individual not authorized to receive service

6  under California law or with EMPI's authorization.  Consequently,

7  under *Barrat* and *Murphy Bros.*, the thirty-day period for EMPI to

8  remove this case to federal court began to run on June 1, 2007,

9  when EMPI's counsel Kristoff, was properly served with a copy of

10 the FAC and summons.  Thirty days after June 1, 2007, was July 1,

11 2007, a Sunday.  Therefore, EMPI had until Monday, July 2, 2007,

12 to file a timely notice of removal, which it did.  *See* Fed. R.

13 Civ. P. 6(a)(3).

14          2.   Factual Sufficiency of EMPI's Notice of Removal.

15      Plaintiff contends EMPI's Notice of Removal should be

16 rejected because there is no admissible evidence before the court

17 to establish Davis's citizenship.  Plaintiff maintains the Notice

18 of Removal and Zimmerman Declaration both fail to establish

19 Davis's citizenship and refute the allegation in Plaintiff's FAC

20 that Davis is a California citizen.  Plaintiff also argues EMPI

21 is not entitled to amend the Notice of Removal or provide

22 additional evidence of Davis's citizenship in its opposition to

23 Plaintiff's Motion to Remand.  In support of her position,

24 Plaintiff cites two Ninth Circuit cases, *Sanchez v. Monumental*

25 *Life Ins. Co.* 102 F.3d 398 (9th Cir. 1996), and *Gaus v. Miles,*

26 *Inc.*, 980 F.2d 564 (9th Cir. 1992), and two unpublished cases

27 from the Northern District of California, *Kanaan v. Freescale*

28 *Semiconductor, Inc.*, 2007 WL 420241 (N.D. Cal. 2007), and *Henry*

1  *v. Emery Worldwide*, 2003 WL 715899 (N.D. Cal. 2003).   Plaintiff

2  cites these cases for the proposition that the notice of removal

3  statute is strictly construed, and that a defendant cannot amend

4  or supplement a previously filed notice of removal.

5       EMPI contends the court may consider supplemental evidence

6  provided in its opposition to Plaintiff's Motion to Remand for

7  purposes of curing any defect in the original Notice of Removal.

8       It is well-settled that the notice of removal statute is

9  strictly construed.  *Gaus*, 980 F.2d at 566.  However, the cases

10 Plaintiff cite do not support her position that a defendant

11 cannot amend or supplement a previously filed notice of removal.

12 Plaintiff would have the court unduly "exalt form over substance

13 and legal flaw-picking over the orderly disposition of cases

14 properly committed to federal courts."  *Barrow Dev. Co., Inc. v.*

15 *Fulton Ins. Co.*, 418 F.2d 316, 318 (9th Cir. 1969).

16      *Gaus* does not help Plaintiff.  In *Gaus*, the defendant made

17 an unsupported allegation in its notice of removal that the

18 amount in controversy exceeded $50,000.  *Gaus*, 980 F.2d at 567.

19 The defendant stated "the matter in current controversy . . .

20 exceeds the sum of $50,000."  *Id.*  *Gaus* found this allegation was

21 insufficient for removal of the case from state court because no

22 underlying facts supported the allegation.  *Id.*

23      *Sanchez* is another amount in controversy case.  In *Sanchez*,

24 the court held that the defendant failed to meet the amount in

25 controversy requirement.  *Sanchez*, 102 F.3d at 404-06.  The

26 amount in controversy requirement at the time was $50,000.  *Id.*

27 at 405.  The defendant alleged contract damages of $12,500, and

28 also cited California Civil Code § 3345, which permitted the

17

1  trebling of damages, bringing the amount in controversy to

2  $50,000.  *Id.*  The defendant argued that because plaintiff's non-

3  contract claims for relief exceeded $0.00, the amount in

4  controversy requirement had been met.  *Id.*  The court concluded,

5  however, the defendant's calculation of the amount in controversy

6  was "entirely premised on a misinterpretation of [the statute

7  permitting the trebling of damages,]" and had therefore failed to

8  meet its burden of proof.  *Id.*  Plaintiff also had a claim to

9  force the disgorgement of profits from the defendant.  *Id.*  The

10 court concluded that the defendant "provided us with absolutely

11 no evidence which would allow us to determine the extent of the

12 loss which it might incur if an injunction is granted forcing it

13 to disgorge the premiums."  *Id.*  In *Sanchez*, the case was

14 remanded to state court because defendant misinterpreted the

15 applicability of the trebling statute and failed to provide any

16 evidence of loss it might incur.  *Id.*

17    *Kanaan* involved an employment dispute where the citizenship

18 of the parties was at issue.  *Kanaan*, 2007 WL 420241 at *1.  The

19 facts of *Kanaan* are straightforward.  Plaintiff was a California

20 resident when the defendant solicited him to apply for a position

21 reporting to one of the defendant's senior vice presidents.  *Id.*

22 The defendant was a Delaware corporation with its principal place

23 in Texas.  *Id.*  Plaintiff accepted a position with the defendant

24 and resigned his current position in California.  *Id.*  Shortly

25 before commencing his employment with the defendant, the

26 plaintiff learned that the vice president he would be reporting

27 to was being replaced.  *Id.*  Plaintiff was told that he would

28 still have a job, although the exact title and responsibilities

1   were not certain. *Id.* Based on these assurances, plaintiff

2   alleged he put his home in California up for sale and moved his

3   family to Texas. *Id.* Plaintiff began working for the defendant

4   but was terminated several months later. *Id.* Plaintiff filed

5   suit in the Superior Court of California for San Francisco County

6   for promissory fraud, intentional and negligent infliction of

7   emotional distress, negligent misrepresentation, and a violation

8   of the California Labor Code. *Id.* The defendant removed the

9   case to federal court alleging diversity of citizenship. *Id.*

10   The defendant alleged that it was a Delaware corporation with its

11   principal place of business in Texas. *Id.* The defendant alleged

12   on information and belief that plaintiff was a California citizen

13   based on the fact that plaintiff had alleged in his complaint

14   that he "at all relevant times mentioned herein was a resident of

15   the State of California." *Id.* The plaintiff moved to remand

16   contending at the time the complaint was filed he had been living

17   with his family in Texas where he had purchased a home, he was

18   actively seeking employment in Texas, and it was his intention to

19   remain in Texas. *Id.* at *2. The court determined that the

20   complaint did not adequately allege plaintiff's citizenship, and

21   that it also indicated plaintiff had moved to Texas. *Id.* The

22   plaintiff submitted a declaration stating that he moved to Texas

23   from California to accept a position with the defendant, that he

24   purchased a home in Texas, that he was actively seeking

25   employment in Texas, that he intended to remain in Texas, and

26   that his children were enrolled in Texas schools. *Id.* at *3.

27   Because defendant offered no evidence to rebut plaintiff's

28   declaration or to support its allegation that plaintiff was a

1  California citizen, the court remanded the case to state court.
2  *Id.*

3      *Henry* is a wrongful discharge case where the issue was the
4  defendant's principal place of business.  *Henry*, 2003 WL 715899
5  at *1.  In its notice of removal, the defendant stated (1) that
6  the amount in controversy was satisfied because the plaintiff
7  sought emotional distress damages in excess of $500,000, and (2)
8  that the defendant was not a citizen of California, plaintiff's
9  state of citizenship.  *Id.*  The defendant was a Delaware
10 corporation, which left only the issue whether its principal
11 place of business was in a state other than California, i.e.,
12 whether the defendant had a "substantial predominance" of its
13 business activities in a state other than California.  *Id.* at *2.
14 Defendant conceded its "nerve center" was in California.  *Id.*
15 The court held that the defendant failed to meet its burden of
16 showing that a "substantial predominance" of its business
17 activities were in a state other than California, and remanded
18 the case to state court.  *Id.* at *5.  The court found, *inter*
19 *alia*, that the defendant failed to provide evidence regarding the
20 location of 56% of its workforce, how many of its employees
21 interacted with the public, the amount of freight shipped to and
22 from various states in which it did business, the real property
23 it owned, its sources of income, or where its sales took place.
24 *Id.* at *3-4.  In *Henry*, the defendant provided some evidence, but
25 failed to provide sufficient relevant evidence of residence to
26 enable the court to perform a meaningful analysis under the
27 substantial predominance of business test.

28      By contrast, determining the citizenship of an individual

1  is, generally, a less arduous task than determining the

2  citizenship of a large corporation doing business nationally.

3  Here, EMPI has provided substantial factual evidence regarding

4  Davis's citizenship through the Zimmerman and Davis Declarations.

5       *Sinclair*, *Gaus*, *Kanaan*, and *Henry* do not stand for the

6  proposition that a defendant cannot amend or supplement a

7  previously filed notice of removal.  The common thread of these

8  cases is the defendant's failure to provide any evidence

9  regarding the amount in controversy or the citizenship of a

10 particular party.  Here, by contrast, EMPI stated in its notice

11 of removal that Davis was a citizen of Missouri because he

12 resided there.  Unlike the defendants in *Gaus*, *Sanchez*, *Kanaan*,

13 *and Henry*,  EMPI provided the following evidence that Davis was a

14 Missouri citizen: (1) the Zimmerman Declaration, which states

15 "According to the personnel records maintained by EMPI in the

16 ordinary course of its business, Larry Davis's home residence was

17 changed from California to Missouri on June 19, 2006, based on

18 his communication to EMPI that he moved his home residence to

19 Missouri[;]" and (2) the Davis Declaration that states that in

20 May 2006 he sold his residence at 2914 Sommmer Star Road in

21 Placerville, California, that he bought a residence at 78 Harbor

22 View Drive in Reeds Spring, Missouri, that he intended to remain

23 in Missouri indefinitely, that he registered to vote and obtained

24 a driver's license in Missouri, that he paid Missouri state

25 income taxes in 2007, and that he currently resides in Missouri.

26 EMPI's evidentiary submissions are sufficient to support its

27 removal notice.

28      Plaintiff's argument that EMPI is not entitled to amend its

1   notice of removal or provide additional evidence of Davis's

2   citizenship after the time period expired for filing a notice of

3   removal ignores the Ninth Circuit's *Barrow* decision.   In *Barrow*,

4   the court held that allegations in a removal notice that are

5   defective in form, but not so lacking in substance, may be

6   amended.  *Barrow*, 418 F.2d at 318.   The court held that allowing

7   amendment of a formally defective removal notice that is not

8   lacking in substance is the majority view.  *Id.*  The *Barrow* court

9   also specifically rejected the rigid formality Plaintiff suggests

10  should be followed here, to strictly construe the notice of

11  removal statute to prevent supplementation or amendment.  *Id.*

12  The Davis Declaration merely supplements EMPI's notice of

13  removal.   EMPI's notice of removal was not so lacking in

14  substance that it could not be amended or supplemented with the

15  information contained in the Davis Declaration.[3]  The *Barrow*

16  court also held that 28 U.S.C. § 1653 applies to removed actions

17  as well as actions initiated in United States District Courts.

18  *Id.* at 317.   Section 1653 provides: "Defective allegations of

19  jurisdiction may be amended upon terms, in the trial or appellate

20

21        [3] **Plaintiff objects that EMPI filed Davis's declaration in

22  conjunction with its opposition to Plaintiff's Motion to Remand

23  rather than with its notice of removal.   At the hearing on
    Plaintiff's Motion to Remand, counsel for EMPI satisfactorily

24  explained the delay in obtaining and submitting Davis's
    declaration.   EMPI no longer employed Davis as of November 2006

25  and had no control over him at the time this lawsuit was filed in
    state court and when EMPI filed its notice of removal on July 2,

26  2007.   Counsel for EMPI explained it was difficult to reach Davis

27  while they were preparing the notice of removal, and Davis was
    unaccessible two days before the thirty-day limit on filing a

28  notice of removal would have expired.**

                                   22

1  courts."  28 U.S.C. § 1653.[4]  Plaintiff has offered no evidence

2  to rebut the Zimmerman Declaration and the Davis Declaration.

3  Plaintiff's argument rests solely on an allegation in the FAC to

4  establish Davis's citizenship in California.  Through EMPI's

5  notice of removal, the Zimmerman Declaration, and the Davis

6  Declaration, EMPI has met its burden to provide substantial

7  evidence which overcomes Plaintiff's assertion that Davis is a

8  California citizen.

9            3.   Complete Diversity of the Parties.

10       Plaintiff contends diversity of citizenship is absent

11 between Plaintiff, EMPI, and Davis.  Plaintiff argues all parties

12 are California citizens.  EMPI argues the parties are completely

13 diverse as Plaintiff is a citizen of California, EMPI is a

14 citizen of Minnesota, and Davis is a citizen of Missouri.

15 Plaintiff's California citizenship is not disputed.

16       "Subject matter jurisdiction based upon diversity of

17 citizenship requires that no defendant have the same citizenship

18 as any plaintiff."  *Tosco Corp. v. Communities for a Better*

19 *Env't*, 236 F.3d 495, 499 (9th Cir. 2001).

20            a.   Diversity as to EMPI

21       "In determining whether there is diversity between corporate

22 parties, a corporation shall be deemed to be a citizen of any

23 State by which it has been incorporated and of the State where it

24 has its principal place of business."  *Id.* (citing 28 U.S.C. §

25 1332(c)) (internal quotations omitted).  "Thus, corporations are

26

27 _____

28       [4] Section 1653 was enacted in 1948 and has never been
   amended.

                                23

1    citizens of both the state where they are incorporated and the

2    state where they have their principal place of business." *Id.*

3        "Federal courts generally use one of two tests to determine

4    a corporation's principal place of business." *Tosco*, 236 F.3d at

5    499. "First, the 'place of operations test' locates a

6    corporation's principal place of business in the state which

7    'contains a substantial predominance of corporate operations'."

8    *Id.* (citing *Industrial Tectonics, Inc. v. Aero Alloy*, 912 F.2d

9    1090, 1092 (9th Cir.1990)). "Second, the 'nerve center test'

10   locates a corporation's principal place of business in the state

11   where the majority of its executive and administrative functions

12   are performed." *Tosco*, 236 F.3d at 499 (citing *Industrial*

13   *Tectonics*, 912 F.2d at 1092-93).

14       The Ninth Circuit uses a hybrid approach to determine where

15   a corporation's principal place of business is located.  The

16   "total activities" or "hybrid test" is as follows:

17           Where a majority of a corporation's business activity
             takes place in one state, that state is the corporation's
18           principal place of business, even if the corporate
             headquarters are located in a different state.  The
19           "nerve center" test should be used only when no state
             contains a substantial predominance of the corporation's
20           business activities.

21   *Industrial Tectonics*, 912 F.2d at 1094.

22       Plaintiff's assertion that EMPI is a citizen of California

23   is unfounded.[5]  Plaintiff's FAC only states "EMPI, Inc., is a

24   corporation doing business in the State of California, and doing

25

26       [5] Plaintiff's argument the Zimmerman Declaration lacks
27   foundation, contains inadmissible hearsay, and contains
     conclusory allegations, rendering the Notice of Removal
28   ineffective lacks merit and is not repeated here.

1  business in the County of Fresno" and is devoid of facts to
2  determine EMPI's true citizenship.  Plaintiff has not provided
3  any additional evidence to determine EMPI's citizenship other
4  than alleging its state of incorporation.  In any event, "the
5  burden of establishing federal jurisdiction is on the party
6  seeking removal, and the removal statute is strictly construed
7  against removal jurisdiction." *Prize Frize, Inc. v. Matrix*
8  *(U.S.) Inc.*, 167 F.3d 1261, 1265 (9th Cir. 1999) (citing *Emrich*
9  *v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988)).
10 Here, that party is EMPI.

11      EMPI has provided clear, convincing, and uncontroverted
12 evidence that it is a citizen of Minnesota.  The Zimmerman
13 Declaration, the Supplemental Zimmerman Declaration that contains
14 EMPI's articles of incorporation, and Plaintiff's request for
15 judicial notice of EMPI's registration with the California
16 Secretary of State unquestionably establish EMPI is incorporated
17 under the laws of the State of Minnesota.  If EMPI's principal
18 place of business is in California, complete diversity will not
19 exist.

20      EMPI's principal place of business is in Minnesota.  EMPI
21 manufactures and sells medical devices.  The Supplemental
22 Zimmerman Declaration, which Plaintiff does not refute, indicates
23 the bulk of EMPI's workforce is based in Minnesota.  EMPI employs
24 approximately 988 individuals.  EMPI's Minnesota office has 443
25 employees, or approximately 44.8% of its workforce.  EMPI's South
26 Dakota Manufacturing centers have 149 employees, or approximately
27 15.1% of its workforce.  EMPI's Kentucky office has 83 employees,
28 or approximately 8.4% of its workforce.  EMPI's Florida office

1  has 4 employees, or 0.4% of its workforce.  The remaining 232

2  employees sell EMPI products throughout the United States.  Of

3  these 232 salespeople, only 14 are based in California, or

4  approximately 6% of its salesforce and 1.4% of EMPI's entire

5  workforce.  These numbers establish that a substantial

6  predominance of EMPI's business activities are conducted in

7  Minnesota.  EMPI's principal place of business is Minnesota.

8  EMPI's citizenship for diversity jurisdiction purposes is

9  Minnesota.

10      It is unnecessary to analyze the company's citizenship under

11  the "nerve center" test.  Assuming, *arguendo*, no state contained

12  a substantial predominance of EMPI's business activities, EMPI

13  would also be a citizen of Minnesota under the nerve center test.

14  EMPI exercises day-to-day control of its entire business from its

15  corporate headquarters in Minnesota, nearly all of EMPI's

16  executives maintain their offices in Minnesota, EMPI's

17  administrative and financial offices are in Minnesota, and EMPI

18  keeps and maintains its records at its Minnesota headquarters.

19                    **b.   Diversity as to Davis**.

20      Federal district courts are vested with original

21  jurisdiction over matters in controversy between "citizens of

22  different States."  28 U.S.C. § 1332(a)(1).  The determination of

23  a litigant's state citizenship for purposes of section 1332(a)(1)

24  is controlled by federal common law, not by the law of any state.

25  *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th

26  Cir. 1983).  "To show state citizenship for diversity purposes

27  under federal common law a party must (1) be a citizen of the

28  United States, and (2) be domiciled in the state."  *Id.*

1    Section 1332—the diversity jurisdiction statute—"speaks of

2  citizenship, not of residency." *Kanter v. Warner-Lambert Co.*,

3  265 F.3d 853, 857 (9th Cir. 2001).  "To be a citizen of a state,

4  a natural person must first be a citizen of the United States."

5  *Id.*  "The natural person's state citizenship is then determined

6  by her state of domicile, not her state of residence."  *Id.*  A

7  person's domicile is her permanent home, where she resides with

8  the intention to remain or to which she intends to return."  *Id.*

9  An individual's manifestation of intent to remain in a location

10  is gauged by various objective factors including where the

11  individual resides, is employed, has assets, is registered to

12  vote, seeks medical treatment, has a driver's license, banks, and

13  pays state taxes.  *See, e.g., Altimore v. Mount Mercy Coll.*, 420

14  F.3d 763 (8th Cir. 2005).

15    EMPI has provided, clear, convincing, and uncontroverted

16  evidence that Davis is a citizen of Missouri.  The Notice of

17  Removal states Davis is now, and was at the time Plaintiff

18  commenced this case, a citizen of Missouri because he resides and

19  is domiciled there.  Davis used to work for EMPI as its vice

20  president of sales, which required him to travel throughout the

21  United States.  Davis Decl. ¶ 2.  In November 2006, Davis severed

22  his employment with EMPI.  *Id*.  However, while Davis was still

23  employed with EMPI, he decided to move to Missouri because it was

24  easier, in terms of work-related travel, to be centrally located.

25  *Id.* at ¶ 3.  In May 2006, approximately ten months before

26  Plaintiff filed her Original Complaint, Davis sold his former

27  California residence located at 2914 Sommer Star Road, in

28  Placerville.  *Id.* at ¶ 4.  In June 2006, Davis moved to Missouri

and bought a house located at 78 Harbor View Drive, in Reed
Springs, Missouri, where he presently resides.  *Id.*  Upon moving
to Missouri, Davis registered to vote, obtained a Missouri
driver's license, and paid Missouri state taxes in April 2007.
*Id.*  Davis also has family ties to Missouri.  *Id.*  Davis's mother
and father live in Missouri, and his daughter and her family
moved to Missouri around the same time Davis moved in June 2006.
*Id.* at ¶¶ 3-4.  These uncontroverted facts clearly establish
Davis has planted his roots in Missouri and intends to remain
there.

        Plaintiff's argument that Davis is a California citizen is
not supported by the record.  The only evidence Plaintiff
provides to establish Davis's citizenship is the declaration of
Jesse Zuniga ("Zuniga Declaration"), a private investigator.  The
activity report attached to the Zuniga Declaration contains
Davis's California driver's license number, which was issued in
1997 and was most recently renewed in May 2006; his social
security number; and an address of a piece of real property
located at 5101 Newton Road, Placerville, CA.  The Zuniga
Declaration indicates Davis owned property located at 5101 Newton
Road in Placerville.  Plaintiff provides no evidence Davis ever
resided at this property, and Davis states in his own declaration
that he bought the Newton Road property as an investment in
September 2004 and sold it in January 2007, three months before
Plaintiff initiated this lawsuit.  Plaintiff has not provided any
credible evidence indicating Davis is a citizen of California.
In fact, Plaintiff's evidence supports EMPI's assertion that
Davis is a Missouri citizen.  Curiously, the Zuniga Declaration

1    also lists the address of Davis's current residence at 78 Harbor

2    View Drive in Reed Springs, Missouri.  Davis is a citizen of

3    Missouri.  Complete diversity exists as Plaintiff is California

4    citizen, EMPI is a Minnesota citizen, and Davis is a Missouri

5    citizen.

6              **4.   Amount in Controversy Requirement**.

7         Plaintiff contends the court lacks subject matter

8    jurisdiction in this case because the FAC does not set forth the

9    amount of damages Plaintiff seeks and EMPI has failed to

10   establish that the jurisdictional amount exceeds $75,000,

11   exclusive of interest and costs.  Plaintiff also contends EMPI's

12   counsel's declaration fails to establish the amount in

13   controversy exceeds $75,000 based on the fact that Plaintiff's

14   counsel would not stipulate that Plaintiff's damages were less

15   than $75,000.  EMPI argues based on the nature of the allegations

16   in the FAC and the damages sought, Plaintiff has placed in

17   controversy an amount exceeding $75,000, exclusive of costs and

18   interest.

19        Diversity jurisdiction exists "where the matter in

20   controversy exceeds the sum or value of $75,000, exclusive of

21   interests and costs . . . ."  28 U.S.C. § 1332(a).  In removal

22   cases, the amount in controversy is determined based on the

23   plaintiff's complaint at the time that the notice of removal is

24   filed.  *See Meritcare, Inc. v. St. Paul Mercury Ins. Co.*, 166

25   F.3d 214, 217 (3d Cir. 1999) (stating "the amount in controversy

26   is measured as of the date of removal, a practice similar to that

27   in original jurisdiction suits where the inquiry is directed to

28   the time when the complaint is filed."), abrogated on other

ground by *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005); *see also Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939) (stating defendant's right to remove "was to be determined according to the plaintiffs' pleading at the time of the petition for removal."). In removal cases, "[t]here is a strong presumption that the plaintiff has not claimed a large amount in order to confer jurisdiction on a federal court or that the parties have colluded to that end." *Gaus v. Miles*, 980 F.2d 564 at 566.

"The 'strong presumption' against removal jurisdiction means that the defendant always bears the burden of establishing that removal is proper." *Id.* The burden of proof is on EMPI, as the removing party, to demonstrate by a preponderance of the evidence that the amount in controversy exceeds $75,000. *Guglielmino v. McKee Foods Corp.*, No. 05-16144 at 13580 (9th Cir. October 9, 2007). In cases where the state court complaint is silent or unclear as to the amount of damages sought by the plaintiff, the defendant must prove that the amount in controversy exceeds $75,000. *Gaus*, 980 F.2d at 567. The defendant may prove that the amount in controversy exceeds $75,000 in one of two ways: "(1) by demonstrating that it is facially apparent that the claims are likely above $75,000, or (2) by setting forth the *facts* in controversy-preferably in the removal petition, but sometimes by affidavit-that support a finding of the requisite amount." *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999) (emphasis in original) (citing *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).

Plaintiff's FAC seeks an unspecified total amount of

1  special, general, compensatory, and punitive damages, and

2  attorney's fees.  The FAC contains six causes of action for

3  violation of California Government Code § 12940, *et seq*. for

4  unlawful employment practices including the prohibition of

5  discrimination, harassment, and retaliation in employment on the

6  basis of sex; sexual battery; termination in violation of public

7  policy; breach of employment contract and wrongful termination;

8  failure to pay wages due and owing; and waiting time penalties.

9      The prayer for relief seeks damages for loss of wages,

10  earnings, salary, bonuses and other employment benefits; for loss

11  of future wages, earnings, salary, bonuses, and benefits; for

12  interest under California Civil Code § 3291; general damages for

13  emotional and mental distress; general damages for physical

14  personal injury; consequential damages arising out of the

15  violation of Plaintiff's statutory rights and for termination of

16  Plaintiff; general damages for pain and suffering, including

17  emotional distress; punitive damages; and attorney's fees and

18  costs.  Plaintiff's failure to pay wages cause of action permits

19  the award of attorney's fees under California Labor Code sections

20  218.5 and 1194.

21      The face of the FAC establishes that Plaintiff is seeking

22  damages in excess of $75,000.  Plaintiff alleges EMPI breached

23  its employment contract with her by refusing to pay her

24  approximately $30,000 in earned wages and commissions.  FAC ¶ 39.

25  As Plaintiff has put at least $30,000 at issue, it must be

26  determined if the remaining causes of action support damages

27  totaling more than $45,000.  Plaintiff has alleged Davis made

28  numerous unwanted sexual advances, lewd and salacious

1 suggestions, and unwanted physical contact, including sexual

2 battery.  Davis compelled Plaintiff to engage in sexual relations

3 with him, Davis grabbed Plaintiff's buttocks and breasts, and

4 Davis informed Plaintiff if she engaged in sexual activity with

5 him he would improve the terms and conditions of her employment

6 with EMPI.  When Plaintiff refused to engage in sexual activity

7 with Davis, he would verbally abuse her, make unwarranted

8 criticisms of job performance, and would assert his influence

9 over Plaintiff's compensation and continued employment with EMPI.

10 Plaintiff alleges she complained to supervisors, who did nothing

11 to stop the sexual harassment.  Plaintiff was terminated on July

12 6, 2006.  Plaintiff also alleges EMPI terminated her for

13 complaing about EMPI's refusal to pay her wages.

14      Plaintiff levels serious allegations of workplace misconduct

15 against EMPI and Davis.  Excluding the $30,000 for wages and

16 commissions due, the face of the FAC more than adequately alleges

17 over $45,000 in damages.  Davis is alleged to have mentally,

18 verbally, physically, and sexually harassed Plaintiff, and

19 requested that Plaintiff engage in sexual favors in return for an

20 improvement of the terms and conditions of her employment.  Such

21 conduct, if proven, would give rise to compensatory and punitive

22 damages, without considering attorney's fees, in excess of

23 $45,000.  These damages, plus the damages of $30,000 for past

24 wages and commissions, exceed $75,000.  Additionally, counsel for

25 Plaintiff conceded that the amount in controversy was not at

26 issue at the hearing on Plaintiff's Motion to Remand.

27      Plaintiff's Motion to Remand is DENIED.

28

32

1    **D.    Plaintiff's Request for Costs and Attorney's Fees**.

2        EMPI properly removed this case from state court to this

3    court.  Plaintiff is not entitled to attorney's fees under 28

4    U.S.C. § 1447(c).

5                              **V.    Conclusion**.

6        For all the reasons stated above, Plaintiff's Motion to

7    Strike the Zimmerman Declaration is DENIED, and Plaintiff's

8    Motion to Remand to state court is DENIED.

10   IT IS SO ORDERED.

11   Dated:    February 28, 2008                    /s/ Oliver W. Wanger
                                          UNITED STATES DISTRICT JUDGE

33